[Civ. Nos. 14881, 15048.   First Dist., Div. Two.   Apr: 22, 1952.]

THE PEOPLE ex rel. J. M. O. and J. O.

Sullivan, Roche, Johnson & Farraher for Appellant.

John A. Grennan for Respondent.

DOOLING, J.—By an order made in the juvenile court on November 14, 1950, after proceedings regularly had therein, the two children, one of each sex, of appellant father and respondent mother were declared wards of the juvenile court and the custody of said children was awarded to the mother with the right in the father to have said children on alternate week ends and during a part of the summer vacation.  An appeal was taken from that part of the order only which awarded custody to the mother and the order declaring the children wards of the court has become final.  Pending this

454

appeal by order of the juvenile court a paternal aunt has had custody of the little girl and the mother has had custody of the little boy. (Welf. & Inst. Code, § 580.)

In making the order appealed from the juvenile court adopted the findings of the referee. The referee's findings so adopted recite:

"That said parents are involved in prolonged, embittered litigation over custody of said persons as a result of which said persons live in constant turmoil and are continually subjected to scenes of unwholesome emotional outbursts and actual physical violence involving said parents, the maternal grandparents and aides of said mother; that said mother is an emotionally disturbed person who has regularly subjected —— (the little girl) to pelvic examinations which have created an undesirable, (un) wholesome concern in said —— threatening her normal adjustment and development. . . ."

The record is replete with evidence supporting these findings and bare of evidence to the contrary and makes perfectly clear that the scenes of emotional outbursts and physical violence therein referred to were all instigated by the mother, her parents and their friends. The repeated pelvic examinations so found were due to the mother's belief (unfounded in any fact according to the findings of several superior judges, including the judge of the juvenile court, who have successively heard various phases of the litigation between the parents) that the father had engaged in unwholesome practices with his daughter. We do not, for obvious reasons, enlarge upon this unfounded obsession of the mother.

Section 735, Welfare and Institutions Code, requires the court to make a finding of the facts in declaring a child a ward of the juvenile court. It further provides: "The court shall thereupon make such order or orders, *in accordance with such findings,* as may be necessary for the care of such ward of the juvenile court." (Italics ours.)

▇ No extended elaboration is necessary to demonstrate that the quoted findings furnish no support for the custody order actually made. It is obviously not "in accordance with such findings," to requote section 735, Welfare and Institutions Code. The very person who has created the conditions which are found by the court to make it necessary to declare the children wards of the juvenile court is by the same order awarded their custody. The abuse of discretion is readily apparent both from the evidence and the findings.

▇ The trial court apparently acted upon the mother's

affirmative answers (though he made no finding on this subject) to his own leading questions that if given the custody of the children she would put out of her mind her settled belief that the father had abused the person of his daughter "and at least conduct yourself with a feeling that: 'Well, maybe I have been wrong, and I certainly shall not indulge in any of those practices in the future.' "

Counsel for appellant sought to cross-examine the mother as to her then present attitude and beliefs about the father's conduct toward his daughter. The trial court refused to allow any cross-examination on this subject. Counsel for appellant then made an offer of proof that by his cross-examination of the mother he wished to show: "that her present belief and conviction at the present time as of this day is that the charges she has made against her husband . . . in the past as to . . . mistreatment of these two children, as to acts of perversion and degeneracy . . . that she is at the present time of the firm belief and conviction that those charges are true."

In view of all the sordid charges groundlessly made by the mother of the children against their father and the unfortunate reaction of her belief in their truth upon the children counsel for appellant should have been allowed the reasonable opportunity by cross-examination to test the probability of her being able to keep her promise to the court that she would act in the future as if she no longer believed them true. In our opinion it was prejudicial error not to allow this.

Almost one and one-half years have elapsed since the order of November 14, 1950, was made. ▮ The question in custody proceedings is the *present* fitness of the parents at the time of the hearing. (*Prouty* v. *Prouty*, 16 Cal.2d 190, 194 [105 P.2d 295].) Upon the lodging of the remittitur in the trial court a new hearing should be held allowing the fullest latitude to both parents to develop all relevant facts as to the present fitness of each parent to have the children's custody.

There is also an appeal from a subsequent order denying a change of custody pending the appeal. In view of our conclusion that the custody order of November 14, 1950, should be reversed and a new hearing on the subject held the appeal from this subsequent order will be dismissed.

The order of November 14, 1950, insofar as it awards the custody of the children is reversed. The appeal from the subsequent order is dismissed.

Nourse, P. J., and Goodell, J., concurred.